# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MICHAEL MCGLON,<br>On behalf of himself and others<br>Similarly situated,<br><br>**Plaintiff,**<br><br>v.<br><br>SPRINT CORPORATION, et al.,<br>(A Kansas Corporation)<br><br>**Defendants.** | Case No. 16-2099-JAR |

## MEMORANDUM AND ORDER

This matter comes before the Court upon consideration of Defendants Sprint Corporation and Sprint/United Management Company's (collectively "Sprint") Motion to Enforce Settlement Agreement and Impose Sanctions (Doc. 89). An evidentiary hearing was held March 5, 2018. After considering the arguments, evidence, and testimony of the parties, the Court is prepared to rule. For the reasons explained in detail below, the Court denies Sprint's motion.

## I. Background

On February 16, 2016, Michael McGlon filed this collective action Complaint against Sprint, alleging that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et.seq.*, by failing to pay him, and BISO Inside Sales Representatives similarly situated to him, minimum wages and overtime required by the FLSA. McGlon was represented by Class Counsel Brent Hankins and Brendan Donelon. This Court granted McGlon's motion for conditional certification on December 6, 2016, and 152 opt-in plaintiffs joined the lawsuit.

1

The parties participated in mediation on July 6, 2017. A Settlement Agreement was negotiated and executed by Sprint on August 30, 2017. On September 1, 2017, the parties filed a Joint Motion for Settlement Approval, and the Court granted the motion, thereby approving the Settlement Agreement, on September 6, 2017.[1] The Settlement Agreement was not filed under seal. In performance of the Settlement Agreement, Sprint paid a total settlement sum of $365,000, with payments of $120,450 and $7,954 to Class Counsel for attorneys' fees and costs, respectively, incurred in the prosecution of McGlon's collective action claims.

Section 22.1 of the Settlement Agreement states:

> The Parties' negotiations [] shall be held confidential other than necessary disclosures made to the Court. Class Counsel and the Named Plaintiff shall not issue, nor cause to be issued, any statements to the public or media regarding the Settlement or any of its terms, including statement on any website(s) or via social media.[2]

On December 6, 2017, Tijuana Mingo filed a complaint asserting a collective class action under § 216(b) of the FLSA against the same Defendants, *Mingo v. Sprint Corporation, et al.*, Case No. 17-2688-JAR, which was assigned to this Court. This case was brought by individuals who did not opt into the *McGlon* case, but are asserting the same claims. The complaint in *Mingo* describes the class sought for certification as being:

> All persons who worked as a BISO Inside Sales Representatives (or persons with similar job duties) for Sprint within three years prior to the filing of this Complaint, but excluding any persons who participated via consent in the FLSA collective action *McGlon, et al. v. Sprint Corporation, et al.*, D. Kan. case no.: 2:15-cv-2099-JAR (hereinafter the "FLSA Collective").[3]

---

[1] Docs. 85, 88.

[2] Doc. 86-1 at 18.

[3] Case No. 17-2688, Doc. 1.

2

On December 8, 2017, The Kansas City Star ("The Star") published an article entitled "After Sprint settles lawsuit for overtime pay, more employees sue."[4] The article reported *inter alia*, that after previously settling an overtime pay dispute with 153 employees, a new collective class action lawsuit had been filed against Sprint on the same complaint.

At the hearing, the Court heard testimony from Sprint's in-house counsel and Class Counsel, Brendan Donelon and Brent Haskins.

### *Heather Hamilton*

Hamilton is Sprint's in-house counsel. She oversaw the *McGlon* litigation and served as Sprint's company representative at the mediation. Hamilton testified that the *McGlon* case was filed in February 2016 and the Court conditionally certified the collective action in December 2016. There was no discovery conducted and a mediation was held July 6, 2017. At that time, there were 153 potential class members. The case settled at mediation for $365,000. A Stipulation of Settlement Agreement was executed by the parties, and on August 30, 2017, Hamilton signed the Settlement Agreement on behalf of Sprint.[5] As part of the settlement, Class Counsel was paid $128,404 for their attorneys' fees and costs.

Hamilton testified about the settlement negotiation process. Class Counsel prepared the first draft, then drafts of the Agreement were exchanged by the attorneys for several weeks. Hamilton testified that Section 22.1 of the Agreement was drafted by Sprint, and that the provision is clear and unambiguous and "completely prohibits" Class Counsel or the named plaintiff, Michael McGlon, from issuing or causing to be issued any statements regarding the Settlement or any of its terms in any public media forum. Hamilton testified that the provision

---

[4] Def. Ex. 2.
[5] Def. Ex. 1.

was an essential settlement term, that Sprint would not have settled at mediation if the term was not in the Settlement Agreement, and that it needed the term to be completely enforced in order to uphold the Agreement.

Hamilton further testified as to how Sprint benefits from the language in Section 22.1. Because of the nature of FLSA opt-in actions, she stated this provision was designed to diminish public discussion about FLSA actions and to prohibit public comments and statements to the media. Publication of the Settlement also had a damaging effect on Sprint's reputation in the community as well as a damaging effect on Sprint's work force. Hamilton testified that Sprint takes great pride in their work force and complying with wage and hour laws, and The Star article reached a large publication audience.

Hamilton conceded that much of the information in The Star article was a matter of public record, but testified that Sprint takes issue with specific paragraphs in the article. First, paragraphs four and five of the article state:

> Mingo hadn't worked at Sprint since February 2015 and hadn't heard about the first lawsuit. But a former co-worker she kept in touch with had been covered by the settlement.

> "She asked me about it, and I didn't know anything about it," Mingo said.[6]

Hamilton testified that Class Counsel arranged for Ms. Mingo to be interviewed by The Star and make statements about the McGlon settlement, which she believes to be in violation of Section 22.1 of the Settlement Agreement.

Second, paragraphs six and seven of the article state:

> Mingo contacted the attorneys who handled the case, as did several others as word of the settlement spread.

---

[6]Def. Ex. 2.

4

> "You expect one or two of those, maybe a half dozen," attorney Brent Hankins said of the calls from employees who didn't know about the first lawsuit. "For the better part of 10 days or two weeks, I was probably getting two calls a day."[7]

Hamilton testified that these paragraphs violate the Settlement Agreement because Class Counsel is commenting and giving statements to The Star about his experiences with what happened to him following the *McGlon* settlement.

Finally, paragraph eighteen of the article states:

> Hankins said many simply never got the notice because they had moved or didn't respond because they believed they would receive little from the court case. He said some still working at Sprint likely were concerned about losing their jobs.[8]

Hamilton testified that Hankins's statements discuss terms of the settlement, specifically, how the class was defined, the notice consent forms, the amount of settlement funds to be distributed to and received by class members, and why employees did not join or were not part of the settlement class, suggesting Sprint improperly retaliated against employees for joining the lawsuit.

Hamilton confirmed that The Star reached out to Sprint about the article, but Sprint declined to comment and expected Class Counsel to do the same. Hamilton testified about how Class Counsels' comments damaged Sprint, including serving as an advertisement for the *Mingo* lawsuit and against Sprint as a whole. She stated that Sprint was requesting the Court to order half the amount paid to Class Counsel be remitted back to Sprint, as well as enforcement of Section 22.1 of the Agreement prohibiting any additional statements by Class Counsel regarding the settlement or any of its terms.

---

[7] *Id.*
[8] *Id.*

5

*Brendan Donelon*

Donelon was Class Counsel in the *McGlon* litigation and is Class Counsel in the pending *Mingo* litigation. He attended the mediation in the *McGlon* case in July 2017, and acknowledged that the Settlement Agreement was jointly drafted by the parties. Donelon confirmed that Sprint added Section 22.1 to the Agreement during negotiations, and that he was comfortable with the language because it referred to the "Settlement," which is a defined term in the Agreement.

Donelon testified that Mark Davis, a reporter with The Star, called him on December 6, 2017, and that he memorialized their discussion in a sworn declaration, attached to Class Counsel's response to Sprint's Motion to Enforce Settlement.[9] Donelon testified that Davis asked him about the details of the *McGlon* lawsuit and settlement and he informed Davis that he could not talk about it, meaning the details of the Settlement Agreement. Donelon testified that when Davis inquired why employees did not participate in the *McGlon* litigation, he explained why in the context of how FLSA cases in general work and the opt-in mechanism for collective class actions. Donelon testified that he typically does not talk to the media about FLSA settlements, instead saying the matter is "resolved." After he told Davis he could not talk about the Settlement, Davis made the comment that he had the case number and could look the case up, as he monitored court filings as part of his job. Donelon gave Davis Hankins's information because Davis wanted to interview Ms. Mingo about the new lawsuit.

Donelon testified that he understood the term "Settlement" in Section 22.1 to mean the terms or conditions of the Settlement Agreement; since The Star article merely described why employees were part of the *Mingo* case and not the *McGlon* case, he believes there was no violation of that provision in the Agreement. Donelson further testified that he did not question

---

[9]Def. Ex. 3.

Sprint about the meaning of Section 22.1 during negotiations, and that he has been involved in other FLSA settlements where the settlement agreement itself was public record, but the defendant did not want plaintiffs' counsel to issue a press release or go to the media to call attention to the actual settlement.

### *Brent Hankins*

Hankins was Class Counsel in the McGlon case and is Class Counsel in the pending *Mingo* lawsuit. He also attended the mediation in July 2016.

Hankins also memorialized his discussion with Davis in a sworn declaration.[10] When asked if he was surprised to see the headline in The Star, "After Sprint settles lawsuit for overtime pay, more employees sue," he testified he was not because Davis made clear he knew about the terms of the *McGlon* Settlement Agreement when he contacted Hankins. Davis informed Hankins that Donelon told him he could not discuss the terms of the Settlement Agreement, and when Hankins confirmed that was accurate, Davis said he was going to pull the file in the clerk's office. Hankins testified that he did not discuss the terms of the *McGlon* Settlement Agreement with Davis, nor did he point him to where Davis could find that information in the court filing system. Hankins testified that Davis knew there were approximately 980 potential employees who could have participated in the *McGlon* litigation and asked if Hankins knew why the participation numbers were so low, with 153 employees opting-in. Hankins told Davis that the responses he had from the current group of persons he had interviewed who wanted to join the *Mingo* lawsuit fit into three categories: those who did not get notice because of an incorrect address or had moved; those who thought they would receive little from the *McGlon* case; and those who were current employees of Sprint concerned about losing

---

[10]Def. Ex. 4.

their jobs. Hankins testified that as of the date of the hearing, approximately 55 individuals have joined the *Mingo* lawsuit. Of that number, none had indicated to Hankins that they learned about the *Mingo* case from the article in The Star.

## II.      Discussion

Sprint contends that Class Counsel breached the Settlement Agreement by making statements to The Star regarding the *McGlon* settlement, in violation of Section 22.1, causing damage to Sprint. That section prohibits Class Counsel and Named Plaintiff McGlon from issuing any statements to the media regarding the "Settlement" or any of its terms. Section 1.19 of the Agreement defines the term "Settlement" as "this Stipulation of Settlement Agreement and Release and the terms outlined therein."[11]

The Court retained jurisdiction over the parties for the purposes of administration and enforcement of the Settlement Agreement, which states that it shall be governed by Kansas law.[12] Under Kansas law, a settlement agreement is a type of contract and is therefore governed by contract principles.[13] The elements of a breach of contract claim are (1) the existence of a contract between the parties; (2) consideration; (3) one party's performance or willingness to perform in compliance with the contract; (4) the other party's breach of the contract; and (5) that the performing party suffered damage caused by the breach.[14]

Generally, under Kansas law, if the language in a written contract "is clear and can be carried out as written, there is no room for rules of construction. To be ambiguous, a contract

---

[11]Doc. 86-1 at 5.

[12]Doc. 86-1, Sec. 23.1.

[13]*Jones v. Wyandot, Inc.*, No. 14-2112-TJJ, 2015 WL 5730604, at *3 (D. Kan. Sept. 30, 2015) (citing *Ferguson v. Smith*, 63 P.3d 1119, 1121 (Kan. Ct. App. 2003)).

[14]*Ryan Dev. Co. v. Ind. Lumbermens Mut. Ins. Co.*, 783 F. Supp. 2d 1179, 1182 (D. Kan. 2011) (applying Kansas law).

must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language."[15]  "In considering a contract which is unambiguous and whose language is not doubtful or obscure, words used therein are to be given their plain, general and common meaning, and a contract of this character is to be enforced according to its terms."[16]  "The cardinal rule of contract interpretation is that the court must ascertain the parties' intention and give effect to that intention when legal principles so allow."[17]  "Where a contract is complete and unambiguous on its face, the court must determine the parties' intent from the four corners of the document, without regard to extrinsic or parole evidence."[18]  Even if the parties interpretations of the contract differ, the Court need not resort to parol evidence to interpret the contract meaning if the contract is complete and unambiguous.[19]

Here, the parties' dispute centers on the unambiguous language in Section 22.1.  Sprint contends that Hankins' comments to The Star consist of statements to the media regarding the Settlement in violation of Section 22.1 of the Agreement.  Class Counsel respond that neither of them discussed any terms of the *McGlon* Settlement Agreement with Davis, and any information and details about the Agreement were obtained by Davis from the publicly filed pleadings in that case.  Class Counsel argue that Sprint conflates statements regarding the *McGlon* litigation with those regarding the Settlement Agreement and its terms, and that Sprint's interpretation of Section 22.1, as defined in Section 1.19, expands the clear and precise language of the

---

[15]*Gore v. Beren*, 867 P.2d 330, 336 (Kan. 1994) (quotation omitted).

[16]*Wagnon v. Slawson Expl. Co.*, 874 P.2d 659, 666 (Kan. 1994) (quoting *Barnett v. Oliver*, 672 P.2d 1228, 1238 (Kan. Ct. App. 1993)).

[17]*Kay-Cee Enter., Inc. v. Amoco Oil Co.*, 45 F. Supp. 2d 840, 843 (D. Kan. 1999) (quoting *Ryco Packaging Corp. v. Chapelle Int'l, Ltd.*, 926 P.2d 669, 674 (1996)).

[18]*Id.* (citing *Simon v. Nat'l Farmers Org., Inc.*, 829 P.2d 884, 887–88 (Kan. 1992)).

[19]*See Decatur Cty. Feed Yard, Inc. v. Fahey*, 974 P.2d 569, 575 (Kan. 1999).

Agreement to prohibit Class Counsel from making any comment to the media that might collaterally touch upon the *McGlon* litigation.

Applying the principles used to interpret contracts under Kansas law, the Court finds that Class Counsels' interpretation is correct. The plain, unambiguous language of Section 22.1 is that Class Counsel is prohibited from issuing statements regarding the "Settlement" specifically, not "settlement" in general. "When the terms of the contract are plain and unambiguous the meaning must be determined by its contents alone and words cannot be read into the agreement which import an intent wholly unexpressed when it was executed."[20] The Court declines to rewrite the Settlement Agreement to fit Sprint's expanded definition of its terms, which would effectively prohibit discussion of even the existence of a settlement. The record shows that Class Counsel declined to discuss the *McGlon* Settlement Agreement when questioned by Davis; Hankins' comments about what he had been told by class members in the *Mingo* litigation who did not participate in the *McGlon* litigation is not a statement regarding the *McGlon* "Settlement" or its terms. Accordingly, based on the clear and unambiguous language in the Agreement, the Court finds there was no breach.

Even if Class Counsel breached the Settlement Agreement, however, there is no basis to justify an award of sanctions on these facts. The Settlement Agreement does not contain a liquidated damages or disgorgement provision for violation of Section 22.1. As the parties note, the court has "inherent power" to "issue sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[21] The cases cited by Sprint, however, are distinguishable from the facts of this case: although these lawsuits involved imposition of

---

[20]*Wood v. Hatcher*, 428 P.2d 799, 804 (Kan. 1967).

[21]*Raymond v. Spirit Aero Sys. Holdings, Inc.*, No. 16-1282-JTM, 2017 WL 3895012, at *5 (D. Kan. Sept. 6, 2017).

sanctions or damages for violations of settlement agreements, including confidentiality provisions, none are FLSA class action settlements "to which a presumption of public access applies,"[22] nor do the circumstances of this case even approach the level of bad faith at issue before those courts. [23]

**IT IS THEREFORE ORDERED BY THE COURT** that Sprint's Motion to Enforce Settlement Agreement and Impose Sanctions (Doc. 89) is **denied.**

**IT IS SO ORDERED.**

Dated: April 18, 2018

                                        S/ Julie A. Robinson
                                        JULIE A. ROBINSON
                                        CHIEF UNITED STATES DISTRICT JUDGE

---

[22] *See Alewel v. Dex One Servs., Inc.*, No. 13-2132-SAC, 2013 WL 6858504, at *3 (D. Kan. Dec. 30, 2013) (denying joint motion to seal FLSA settlement agreement).

[23] *See Baella-Silva v. Hulsey*, 454 F.3d 5, 7, 11–13 (1st Cir. 2006) (breach of settlement agreement that included a confidentiality clause providing for liquidated damages in the amount of $50,000 in the event either party disclosed the terms of the settlement agreement; court awarded liquidated damages and imposed additional sanctions after party electronically filed on the court's public docket a motion for disbursement of funds that disclosed some of the details of the sealed settlement judgment); *Toon v. Wackenhut Corr. Corp.*, 250 F.3d 950, 952, 954 (5th Cir. 2001) (after defendant failed to pay settlement funds as agreed, plaintiff filed unsealed motion to enforce that exposed the terms of the settlement in violation of the confidentiality provision in the settlement agreement; court found plaintiff acted in bad faith by failing to file the motion to enforce under seal and imposed sanctions prohibiting counsel from representing other plaintiffs against the same defendant, ordering $15,000 payment to the court, and reducing the percentage of attorney's fees provided for in counsel's contingency fee arrangement); *Travelers Indem. Co v. Excalibur Reinsurance Corp.*, No. 13-cv-293, 2014 WL 1094451, at *4 (D. Conn. Mar. 19, 2014) (sanctioning party that breached settlement agreement by failing to pay the agreed upon amount; court found that breaching party acted in bad faith by not paying the settlement amount by the due date so that it could continue to have the use of the money at the expense of the moving party and awarded attorney's fees associated with filing and briefing the motion to enforce settlement); *Bittel Tech., Inc. v. Bittel USA, Inc.,* No. C10-00719-HRL, 2011 WL 940300, at *5 n.2 (N.D. Cal. Feb. 18, 2011) (noting generally that the court has the power to order specific performance of a settlement agreement and to order damages or sanctions for breach); *Gulliver Sch., Inc. v. Snay*, 137 So. 3d 1045, 1047–48 (Fla. Dist. Ct. App. 2014) (granting motion to enforce settlement agreement where plaintiff violated confidentiality agreement that prohibited direct or indirect disclosure of the existence or terms of the settlement, where provision contained disgorgement of settlement funds in case of breach).